UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASEY R. BADWAN<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | CIVIL ACTION<br><br>COMPLAINT 1:21-cv-04666<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES**, Casey R. Badwan ("Plaintiff"), by and through his undersigned attorney, complaining as to the conduct of Wells Fargo Bank, N.A. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, and Negligent Misrepresentation.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resided in the Northern District of Illinois, Defendant conducts business in the Northern District of Illinois, a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois, and a substantial part of the property that is the subject of this action is situated in the Northern District of Illinois.

1

**PARTIES**

4. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, owned and resided at the real property located at 15807 Scotsglen Rd., Orland Park, Illinois 60462, ("subject property").

5. Plaintiff is the owner of the subject property and the subject property was purchased for and continues to be used as Plaintiff's primary residence for himself and his family.

6. Defendant Wells Fargo is a mortgage company and banking institution with its principal place of business located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104. Wells Fargo is engaged in the business of collecting or attempting to collect, directly or indirectly, mortgage loans owed or due or asserted to be owed or due using credit reporting, mail, and telephone, including consumers in the State of Illinois. Wells Fargo is a furnisher of information to the major credit reporting agencies, including TransUnion. Equifax, and Experian.

**FACTS SUPPORTING CAUSE OF ACTION**

7. On January 6, 2012, Plaintiff purchased and financed the subject property with Defendant for $260,000 ("subject loan").

8. On April 11, 2016, as a result of the long-term positive banking history that the parties had, Defendant offered to service the refinancing of Plaintiff's home loan. On this same date or shortly thereafter, Plaintiff setup automatic, electronic payments ("automatic payments") of his mortgage payments with Defendant to be taken out on the 6th day of each month.

9. At all times relevant, Plaintiff consistently paid his debts on time, and maintained a positive credit history.

10. In March 2020, Plaintiff placed a call to Defendant to inquire about Defendant's COVID-19 relief program.[1]

11. After connecting with an agent of Defendant, Defendant's agent represented to Plaintiff that late charges can be waived due to hardship caused by COVID-19 without further penalty. Defendant's agent failed to specify the duration of how long late charges can be waived.

12. As Plaintiff's March 2021 mortgage payment was coming due, Plaintiff requested Defendant's agent to stop-payment on his March 2021 automatic withdrawal. Defendant's agent responded by telling Plaintiff to call his bank and request a "stop payment" in order for Defendant to ensure that it does not automatically withdraw Plaintiff's March 2021 mortgage payment.

13. Plaintiff specifically asked Defendant's agent if this will impact any future automatic payments. In response. Defendant's agent stated: "No, this will not impact any future automatic withdrawals we initiate."

14. Subsequently thereafter, Plaintiff called his bank and stopped payment for his March 2020 mortgage payment as directed by Defendant's agent and did not make his March 2020 mortgage payment to Defendant.

15. On April 10, 2020, Plaintiff received a call from Defendant regarding his April 2020 mortgage payment. In the call, Plaintiff pays his March and April payments in full and asks Defendant's agent if his automatic withdrawals for future payments is still intact. Defendant's agent confirmed that his automatic payment was still working and assured Plaintiff not to worry.

16. During this call, Defendant's agent reassured Plaintiff and confirmed that he was current on his mortgage payments.

---

[1] *See*, https://www.wellsfargo.com/jump/enterprise/coronavirus-response/ (last visited July 2021).

17. On or around August 2020, and notwithstanding Defendant's multiple assurances that his mortgage payments would be automatically withdrawn from his bank, Defendant placed a call to Plaintiff seeking immediate payment of his May, June, and July mortgage payments.

18. Bewildered, Plaintiff told Defendant's agent that he had setup automatic payments with Defendant. Defendant's representative told Plaintiff that his payments did not come out because of the stop payment he requested back in March 2020. At no time did Defendant state that this would impact his credit.

19. Due to Defendant's misleading assurances, and due to the misinformation that was repeatedly given to Plaintiff regarding his automatic payments stating that it would not be affected by the stop-payment, including the lack of information and notice regarding the automatic payments, Plaintiff immediately informed Defendant that he wanted to file an appeal or a complaint, and asserted that he had automatic payments setup, thereby never missing a payment.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES

20. In early 2021, Plaintiff accessed his credit reports and discovered that Defendant reported Plaintiff "60 Days Late" in July 2020 on each of his Equifax, Experian, and Transunion credit files.

21. The reporting of the subject loan was materially misleading because Plaintiff was not late on the subject loan through any fault of his own. As set forth above, Defendant assured and reassured Plaintiff that his automatic withdrawals for future payments was still intact.

    **a. Plaintiff's Disputes to Equifax, Experian & TransUnion**

22. In January 2021, Plaintiff initiated credit disputes with Equifax, Experian, and Transunion disputing the materially misleading reporting of the subject loan. Specifically, Plaintiff's detailed credit disputes to Equifax, Experian, and Transunion requested them to accurately report the

subject loan without any late payments as Plaintiff was misled regarding his automatic payment setup with Defendant.

23. Upon information and belief, Defendant received notice of Plaintiff's disputes and all enclosed supporting documents from Equifax, Experian and TransUnion within five days of Equifax, Experian and TransUnion receiving Plaintiff's disputes. *See* 15 U.S. Code §1681i(a)(2).

### b. Defendant's Failure to Correct its Materially Misleading Reporting

24. On or around February 2021, Equifax, Experian, and Transunion responded to Plaintiff's disputes by verifying with Defendant that the 60-day late payment notation was reporting accurately and completely.

25. Despite receiving Plaintiff's disputes, Defendant continued to report the materially misleading notation that Plaintiff was 60-days late in July 2020.

26. The reporting of the Wells Fargo trade line is patently inaccurate, and creates a materially misleading impression that Plaintiff was 60-days late in July 2020. However, Plaintiff was misled after Defendant assured and reassured Plaintiff that his automatic withdrawals for future payments was still intact.

### IMPACT OF CONTINUING INACCURATE REPORTING ON PLAINTIFF'S CREDIT FILES

27. As of today, Defendant's erroneous and materially misleading reporting of the Wells Fargo account continues to paint a false and damaging image of Plaintiff. Wells Fargo has yet to update the Wells Fargo tradeline to accurately reflect the subject loan as current.

28. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after financial hardship.

29. The inaccurate and immaterially misleading reporting of the subject loan continues to have significant adverse effects on Plaintiff's credit rating and his ability to obtain financing because it creates a false impression that Plaintiff is 60-days late on the subject loan, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

30. In order to remedy the continued inaccurate and incomplete reporting of the subject loan and to validate the accuracy of Defendant's credit reporting, Plaintiff purchased an Experian 3-Bureau Credit Report, incurring out of pocket costs.

31. Moreover, Plaintiff attempted to take advantage of lower interest rates by refinancing the subject loan with another lender but was provided with a higher interest rate than he would have otherwise received had Defendant not reported derogatory information regarding the July 2020 payment.

32. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendant ceased or corrected the inaccurate and materially misleading reporting of the subject loan after Plaintiff's dispute.

33. As a result of the conduct, actions, and inaction of Defendant, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit opportunity, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering.

34. Due to the conduct of the Defendant, Plaintiff was forced to retain counsel to resolve the materially misleading credit reporting of the Wells Fargo trade line.

<u>**COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**</u>

35. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

37. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

38. Wells Fargo is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

39. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

40. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Experian, TransUnion, Equifax, and Plaintiff.

41. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian, TransUnion, Equifax, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

42. Had Wells Fargo reviewed the information provided by Experian, TransUnion, Equifax, and Plaintiff, it would have corrected the materially misleading designation of the subject loan, transmitting the correct information to Experian, TransUnion, and Equifax. Instead, Wells Fargo wrongfully and erroneously confirmed its inaccurate and misleading reporting without conducting a reasonable investigation.

43. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with Experian, Equifax, and TransUnion.

44. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian, Equifax, and TransUnion after being put on notice and discovering inaccurate and materially misleading reporting with respect to the subject loan.

45. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate and misleading information from appearing and reappearing on Plaintiff's credit files.

46. Wells Fargo failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Experian, Equifax, and TransUnion under 15 U.S.C. §1681i(a)(1).

47. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Wells Fargo did not correct the errors or the trade line to report accurately and completely. Instead, Wells Fargo wrongfully furnished and re-reported the inaccurate, incomplete and materially misleading information after Plaintiff's disputes to one or more third parties.

48. A reasonable investigation by Wells Fargo would have confirmed the veracity of Plaintiff's disputes, yet the misleading information continues to be reported in Plaintiff's credit files.

49. Had Wells Fargo taken steps to investigate Plaintiff's valid disputes or Experian, Equifax, and TransUnion's requests for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Plaintiff provided all relevant information to support his valid disputes in his requests for investigation.

50. By deviating from the standards established by the mortgage servicing industry and the FCRA, Wells Fargo acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian, TransUnion, and Equifax.

**WHEREFORE,** Plaintiff CASEY R. BADWAN respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

a. An order directing that Wells Fargo immediately delete all of the inaccurate and misleading information from Plaintiff's credit reports and credit files;

b. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

c. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

e. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

f. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION

51. Plaintiff restates and reallages paragraphs 1 through 50 as though fully set forth herein.

52. Defendant had a duty to provide Plaintiff with accurate information regarding his payments to Defendant.

53. As set forth above, Defendant made a false statement to Plaintiff regarding the impact the stop payment would have on his future payments.

54. Plaintiff detrimentally relied on Defendant's false statement by directing his bank to stop payment on the July 2020 payment, which in turn caused the auto-payments to cease.

55. Had Plaintiff known that the stop-payment request would have turned off the auto-payments feature, Plaintiff would have made the payments manually.

56. Plaintiff was justified in relying on Defendant's false statement as a consumer has no reason to doubt the veracity of the information provided by his/her mortgage company.

57. Defendant either made the false statement knowingly or was careless in ascertaining the truth of the statement.

58. Defendant's misrepresentations were made to induce Plaintiff to default on the subject loan, which would in turn enrich Defendant as the default triggers default fees that Defendant can contractually collect from Plaintiff.

59. Defendant's misrepresentations regarding the automatic payments being unaffected by the stop payment were deliberately false or negligent misrepresentations which Defendant knew or should have known to be false and misleading

60. As set forth above, Plaintiff suffered damages as a result of Defendant's false statements, including out of pocket expenses incurred to monitor his credit, increased price of credit, and a decreased credit score.

**WHEREFORE**, Plaintiff CASEY R. BADWAN respectfully pray this Honorable Court for the following relief:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying misrepresentations;
   c. Award Plaintiff statutory damages, in an amount to be determined at trial, for the underlying misrepresentations;
   d. Award Plaintiff punitive damages, in an amount to be determined at trial;
   e. Award Plaintiff costs and reasonable attorney's fees; and
   f. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: August 31, 2021                                   Respectfully Submitted,

/s/ Marwan R. Daher
Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
mdaher@sulaimanlaw.com