IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Casey Badwan,                )
                             )
       Plaintiff,      )
                             )
                             )
                             )
     v.                 )   No. 21 C 4666
                             )
Wells Fargo Bank, NA,     )
                             )
       Defendant.      )

Memorandum Opinion and Order

In this action, plaintiff Casey Badwan sues Wells Fargo Bank under the Fair Credit Reporting Act ("FCRA") and state common law, claiming that the bank reported materially misleading information to the three credit reporting agencies (or "CRAs"), Equifax, Experian, and TransUnion. Wells Fargo moves to dismiss the complaint in its entirety. I grant the motion for the following reasons.

I.

Plaintiff took out a home loan from defendant in January of 2012. The parties refinanced the loan in April of 2016, at which time plaintiff set up "automatic, electronic payments ('automatic payments') of his mortgage payments with Defendant to be taken out on the 6th day of each month." Compl. at ¶ 8. Plaintiff's automatic payments were effectuated without incident until March of 2019,

when plaintiff contacted defendant to inquire about its Covid-19 relief program. Plaintiff learned from defendant's agent that "late charges [could] be waived due to hardship caused by COVID-19 without further penalty." *Id*. at ¶ 11. Plaintiff asked defendant's agent not to withdraw his March 2020 payment,[1] to which the agent replied that plaintiff had to "call his bank and request a stop-payment." *Id*. at ¶ 12. Plaintiff asked the agent whether doing so would stop future automatic payments. Defendant's agent told him, "[n]o, this will not impact any future automatic withdrawals we initiate." *Id*. at ¶ 13.

Following defendant's instructions, plaintiff called his bank and requested that it stop payment on his March 2020 automatic payment, which it did. On April 10, 2020, plaintiff received a call from defendant's agent informing him that both his March 2020 and April 2020 payments were outstanding. Plaintiff made payments for both months over the phone.[2] Plaintiff asked defendant's agent if his automatic withdrawals for future payments were "intact," and defendant's agent "confirmed that his automatic payment was still working and assured Plaintiff not to worry." The agent also

---

[1] In this paragraph, plaintiff refers to this as his "March 2021" payment, but in context, I understand "2021" to be a mistake, and that he means his March 2020 payment.
[2] Plaintiff does not contend that these payments included any late fees.

2

assured him that his loan payments were current as of that time. Compl. at ¶¶ 15-16.

In August of 2020, plaintiff received another call from an agent of defendant's, this time informing him that his May, June, and July payments were all outstanding. Plaintiff was "[b]ewildered" because he believed based on defendant's assurances that automatic payments would be withdrawn from his bank account for those months. But the agent plaintiff spoke to in August of 2020 explained that the payments "did not come out" because of plaintiff's March 2020 stop-payment instruction to his bank. *Id*. at ¶ 18. "Plaintiff immediately informed Defendant that he wanted to file an appeal or a complaint, and asserted that he had automatic payments setup, thereby never missing a payment." *Id*. at ¶ 19. Plaintiff does not claim, however, that his May, June, or July 2020 loan payments were ever actually made.

In early 2021, plaintiff accessed his credit report and discovered that each of the three credit reporting agencies reported in July of 2020 that his mortgage payments were "60 Days Late." Compl. at ¶ 20. Plaintiff initiated a dispute with each agency, in which he disputed "the materially misleading reporting of the subject loan." *Id*. at ¶ 22. In February of 2021, the CRAs responded to plaintiff's dispute "by verifying with Defendant that the 60-day late payment notation was report[ed] accurately and completely." *Id*. at ¶ 24. Plaintiff alleges that he was injured by

3

defendant's conduct because "[t]he inaccurate and immaterially (sic) misleading reporting of the subject loan continues to have significant adverse effects on Plaintiff's credit rating and his ability to obtain financing because it creates a false impression that Plaintiff is 60-days late on the subject loan, rendering Plaintiff a high-risk consumer and damaging his creditworthiness." *Id.* at ¶ 29. In this connection, plaintiff asserts that at an unspecified time, he attempted to refinance his home through another lender but received a higher interest rate than he would otherwise have received as a result of defendant's "derogatory" reporting. *Id.* at ¶ 31.

Plaintiff's complaint asserts that defendant violated the Fair Credit Reporting Act by failing to conduct an adequate investigation and to correct the "60 Day Late" reporting on his home loan after he submitted a dispute to the CRAs. He also asserts a claim for negligent misrepresentation based on defendant's false statements about how plaintiff's March 2020 stop-payment instruction to his bank would affect future automatic payments. He claims to have "suffered various types of damages ... including specifically, out-of-pocket expenses, the loss of credit opportunity, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering." Compl. at ¶ 33. For

4

each claim, he seeks statutory, compensatory, and punitive damages.

Defendant's motion argues that plaintiff's FCRA claim fails because the "60 Days Late" reporting plaintiff challenges was, as plaintiff ultimately concedes, "technically accurate," and because it was not misleading in any legally cognizable manner. Defendant also raises various grounds for dismissing plaintiff's state law claim, but since I agree that his FCRA claim cannot proceed for the reasons explained below, I decline to assert jurisdiction over that claim.

## II.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive dismissal, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

The FCRA imposes duties on entities such as defendant who furnish credit information to CRAs. *Jackson v. Experian Info. Sols., Inc.*, No. 15 C 11140, 2016 WL 2910027, at *3 (N.D. Ill. May 19, 2016). While the statute does not authorize a "private right of action under 15 U.S.C. § 1681s-2(a), which prohibits furnishing inaccurate information to credit reporting agencies," *Zahran v. Bank of Am.*, 15-CV-1968, 2016 WL 826402 at *3 (N.D. Ill. Mar. 3, 2016) (citations omitted), it does create a private right of action "when lenders, after receiving notice from a CRA that they might have provided inaccurate information, do not conduct a reasonable investigation and correct any misinformation revealed therein." *Tillman v. Navient Sols., LLC*, No. 18-CV-04625, 2020 WL 3250799, at *4 (N.D. Ill. June 15, 2020)(citing 15 U.S.C. § 1681s-2(b)). "[O]nce a furnisher of credit information receives notice from a CRA that a consumer has disputed information the furnisher provided to the CRA, the furnisher is required to conduct a reasonable investigation and report the results of that investigation to the CRA." *Jackson*, 2016 WL 2910027, at *3.

To prevail on a claim against an information furnisher under § 1681s-2(b), a plaintiff must show that: "(1) he notified a CRA that it was reporting inaccurate information; (2) the CRA relayed the plaintiff's claim to the information furnisher; and (3) the furnisher failed to investigate and correct the allegedly inaccurate information in question." *Id*. All agree that plaintiff

6

plausibly alleges facts supporting the first two elements. Plaintiff insists that his allegations also support the third element, but even assuming, as I must, the truth of plaintiff's allegations, the complaint does not plausibly suggest that defendant failed to conduct a reasonable investigation, since nothing in the complaint indicates that it furnished "incomplete or inaccurate" information about plaintiff's loan payment history.

It is true, as plaintiff observes, that courts have held that "inaccurate" credit information includes "both factually incorrect information and information that creates a misleading impression." *Jackson*, 2016 WL 2910027, at *3 (N.D. Ill. May 19, 2016) (citing cases). Plaintiff's theory is that although "technically accurate," it was materially misleading for defendant to inform the CRAs that his loan payments were "60 days late" because "[p]laintiff was not late on his payments through any fault of his own." Pl.'s Resp., ECF 28 at 4. This theory of FCRA liability was squarely rejected in *Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014). In *Levine*, the plaintiff sued the defendant under the FCRA for informing the CRAs that he had missed two successive monthly payments owed the defendant pursuant to an auto loan agreement. The plaintiff acknowledged that he had missed the payments, but he blamed the missed payments on the fact that he had not received the billing statements and payment reminders

the defendant customarily provided as a "courtesy." *Id.* at 872.
The court explained:

> [I]t is important to note that Chase is required to
> report delinquencies. § 1681s-2(a)(5). Levine cannot and
> does not dispute that his account was delinquent. Levine
> insists that the delinquencies weren't his fault because
> he relied upon Chase's "custom and practice" of sending
> monthly statements as a reminder that prompted him to
> make his monthly payment. In this context, it is
> difficult to fathom how Chase's investigation could be
> considered unreasonable. The "pertinent question" is
> whether the furnisher's procedures were "reasonable in
> light of what it learned about the nature of the dispute
> from the CRA's notice of dispute." *Gorman v. Wolpoff &*
> *Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).
> Chase's investigation simply confirmed that Levine
> failed to make timely payments that were due and owing.

*Id.* at 875.

So it is here. Plaintiff does not allege any specific flaw in
defendant's investigation procedures (indeed, the complaint is
silent on this front), and nothing in the nature of the dispute he
describes suggests that the procedures defendant followed to
verify the information it furnished about his payment history were
unreasonable. Plaintiff did not challenge the existence of the
debt, the amount of the debt, the unpaid status of the debt, or
the identity of the creditor. Rather, his dispute concerned only
the *reason* he failed to make his payments. Like Levine, "what
[Badwan] really seems to want is an admission that [Wells Fargo]
is at fault for his missing payments." *Id.* But determining who is
"at fault" for plaintiff's missed payments implies the sort of
judgment that the FCRA neither expects nor requires furnishers of

8

information to make. *See, e.g., Chiang v. Verizon New England Inc.*,
595 F.3d 26, 38 (1st Cir. 2010)("furnishers are 'neither qualified
nor obligated to resolve' matters that 'turn[ ] on questions that
can only be resolved by a court of law.'") (quoting *DeAndrade v.
Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)) (alteration in
*Chiang*). Accordingly, as the court explained in *Levine*, a
creditor's failure to inform CRAs of the reason a debtor claims he
failed to pay a valid debt is not the sort of omission that renders
otherwise accurate information about plaintiff's payment history
incomplete or materially misleading. *See id*. at 876. Indeed, only
a dispute "that could materially alter how the reported debt is
understood ... gives rise to a furnisher's liability under § 1681s-
2(b)." *Id*.

The dispute plaintiff raised differs in nature from those at
issue in nearly every case he cites for the argument that
"technically accurate" information can be materially misleading.
For example, in *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d
876, 891 (9th Cir. 2010), the plaintiff disputed the legal validity
of the reported debt, and thus her obligation to pay it.[3] In *Dalton*

---

[3] Plaintiff's citation to *Carvalho* is perplexing. The court in that
case *rejected* the plaintiff's claim under the FCRA, which asserted
the theory that the defendants "unfairly malign[ed] the
creditworthiness of innocent consumers by reporting disputed debts
without undertaking a searching inquiry into the consumer's legal
defenses to payment," noting that the reporting agencies "are not
tribunals." Nothing in *Carvalho* favors plaintiff's position here.

*v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2001), the plaintiff disputed the accuracy of criminal history information a consumer reporting agency provided about him, which read, "Felony—Third degree assault—1/26/94—Guilty..." when in fact the plaintiff had pled guilty to a misdemeanor. And in *Taylor v. Screening Reps., Inc.*, No. 13 C 02886, 2015 WL 4052824, at *1 (N.D. Ill. July 2, 2015), the plaintiff disputed a rental screening report reporting that she had been "evicted," in 2009, from property she had not lived in since 2004. The property was subsequently subject to a foreclosure action against its third-party owners, which triggered the eviction proceedings in which the plaintiff was named. Any casual observer equipped with common sense can understand why the disputes at issue in *Dalton* and *Taylor* involved "misleading" information. Far less obvious is plaintiff's claim that it was "misleading" to characterize his delinquent payment as "late" simply because he blamed defendant for the delinquency.

It is true that *Abukhodeir v. AmeriHome Mortg. Co., LLC*, in which the court declined to dismiss the plaintiff's FCRA claim under Rule 12(b)(6), bears some factual similarities to this case. 2021 WL 3510814 (M.D. Fla. Aug. 10, 2021). Like plaintiff, the *Abukhodeir* plaintiffs challenged the reporting of their delinquent mortgage payments, claiming that they were enrolled in the defendant's automatic payment plan and had successfully made

10

payments pursuant to the plan for several years until "for an unknown reason their automatic payments had not been processed." *Id.*, at *1. The *Abukhodeir* plaintiffs, too, "admit[ted] that they did not make their mortgage payments on time but argue[d] it was not their fault." *Id.* at *3. They claimed that the defendants' "reporting of the late payments is thus misleading because it improperly places the blame for the late payments on Plaintiffs instead of AmeriHome, the one at fault for the delinquency". *Id.* at *3.

Unlike plaintiff, however, after learning that their monthly mortgage payments had been reported as late, the *Abukhodeir* plaintiffs called the defendant directly and were assured that defendant "would delete any late fees Plaintiffs incurred and help them resolve the issue"—an allegation the court construed as an acknowledgement by the defendant that it was at least partially responsible for the delinquency. *Id.* at *4. In addition, the plaintiffs alleged that they had sufficient funds in their account to cover the automatic payments; that the defendant was fully authorized at all times to deduct the monthly payments; that the plaintiffs' payments would have been made but for the defendant's "unilateral omission"; and that a "simple review" of the defendant's own records would have revealed the misleading nature of the defendant's reporting. *Id.* at *1; *see also* First Am. Compl.

at ¶¶ 30-34, 45-46, *Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 8:21-cv-563-WFJ-JSS (M.D. Fla. Aug. 10, 2021), ECF No. 34.

Here, by contrast, plaintiff alleges that he directed his bank to *stop* his March 2020 payment to defendant, and he does not claim to have reauthorized the automatic payments thereafter. Moreover, plaintiff must have known by April of 2020, when defendant's agent called him to collect his outstanding balance, that the automatic payments had not, in fact, been reinstated after his stop-payment order. Finally, a close reading of plaintiff's allegations reveals that plaintiff does not claim that defendant failed to "initiate" automatic withdrawals from his account as promised, but only that the payments were "not withdrawn." Compl. at ¶¶ 13-14. For these reasons, unlike the complaint in *Abukhodeir*, these allegations do not raise the inference that defendant was aware of its responsibility for plaintiff's missed payments but continued to report them anyway, nor do they suggest that defendant failed to discharge its obligation "to conduct a reasonable investigation and to correct inaccurate or incomplete information" it discovers. *Abukhodeir* 2021 WL 3510814, at *3.

In short, I conclude that neither *Abukhodeir* nor any other case plaintiff cites supports a § 1681s-2(b) claim on the facts he alleges. And because I dismiss plaintiff's only federal claim, I decline to exercise supplemental jurisdiction over his state claim. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904,

907 (7th Cir. 2007) (describing the "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims") (emphasis removed).

III.

For the foregoing reasons, defendant's motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 12, 2022

13